**FILED**
**CLERK**

January 24, 2023

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ABDULIO IVAN CIFUENTES GRAMAJO, individual
and on behalf of all others similarly situated,

                    Plaintiff,

            -against-

BASARI MARKET LLC, and AVRAHAM BILGORAY,
as individuals,
                Defendants.
-----------------------------------------------------------X

**REPORT AND
<u>RECOMMENDATION</u>**
21-CV-4960 (EK) (JMW)

Roman M. Avshalumov
James O'Donnell
**Helen F. Dalton & Associates, P.C.**
80-02 Kew Gardens Road, Suite 601
Kew Gardens, NY 11415
*For Plaintiff Abdulio Ivan Cifuentes Gramajo*

*No Appearance by Defendants Basari Market, LLC
And Avraham Bilgoray*

**WICKS,** Magistrate Judge:

      Basari Market LLC is a food market and deli located in Roslyn, New York, where

Plaintiff Abdulio Ivan Cifuentes Gramajo, was employed as a deli worker, food preparer and

butcher. He brought this collective action pursuant to the Fair Labor Standards Act, 29 U.S.C.

§§ 201 *et seq*. ("FLSA") and the New York Labor Law ("NYLL"), against Defendants Basari

Market LLC ("Basari") and Avraham Bilgoray ("Bilgoray"). (DE 1.) Plaintiff alleges that

Defendants failed to properly pay overtime wages, maintain accurate payroll records, and

provide required wage statements. (*Id.*) Defendants were served, but never answered, moved, or

responded to Plaintiff's complaint. (DE 7-8.) After a period of inactivity on the Court's docket,

1

and at the Court's prompting, Plaintiff filed a letter advising that the parties had reached a settlement.  (DE 10.)

Before the Court on referral from the Hon. Eric R. Komitee is Plaintiff's request for settlement approval and dismissal of this case with prejudice.  (DE 13; Electronic Order dated Apr. 25, 2022.)

For the reasons set forth below, the undersigned respectfully recommends that Plaintiff's motion for settlement approval be DENIED.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

**Factual Background**

According to the Complaint, Basari is a food market and deli located in Roslyn, New York.  (DE 1 at ¶¶ 8, 21.)  Plaintiff believes that Bilgoray owns and operates Basari.  (*Id.* at ¶ 12.)

Plaintiff was employed by Defendants from January 2021[1] to August 2021 as a deli worker, food preparer, and butcher.  (*Id.* at ¶¶ 20-21.)  Plaintiff alleges that he was paid approximately $700 per week during his employment and regularly worked 62 hours per week.  (*Id.* at ¶¶ 22-23.)  However, Plaintiff contends Defendants failed to pay Plaintiff overtime wages for the hours he worked over 40 hours per week.  (*Id.* at ¶ 24.)  Further, Plaintiff contends that he worked 10 hours or more per day for at least 5 days a week, but Defendants failed to pay an extra hour of minimum wage compensation as spread of hours pay.  (*Id.* at ¶ 25.)  According to Plaintiff, 10-15 employees were subject to similar payment structure during this time.  (*Id.* at ¶ 31.)  Plaintiff alleges Defendants failed to post required wage notices and maintain accurate

---

[1] Plaintiff alleges in his Complaint that his employment with Defendants began in January 2020.  (*Id.* at ¶¶ 8, 20.)  However, in moving for settlement approval, Plaintiff clarifies that this was alleged in error and that Plaintiff actually started working for Defendants in January 2021.  (DE 31 at n.3.)

payroll records. (*Id.* ¶¶ 26-27.) By his Complaint, Plaintiff seeks damages in the amount of $100,000, plus interest, attorneys' fees and costs. (*Id.* at ¶ 27.)

**Procedural Background**

Plaintiff filed his Complaint on September 2, 2021. (DE 1.) Affidavits of service filed to the docket demonstrate that on September 14, 2021, Defendants were each served with copies of the Civil Cover Sheet, and Summons and Complaint. (DE 7-8.)

Defendants' time to answer, move, or otherwise respond came and went, but Defendants did not appear. Plaintiff did not request a certificate of default.

On December 29, 2021, the undersigned issued an Order to Show Cause, directing Plaintiff to show cause on or before January 14, 2022, why it should not be recommended to Judge Komitee that the case be dismissed for failure to prosecute. (Electronic Order, dated Dec. 29, 2021) (citing Fed. R. Civ. P. 41.)

On January 14, 2022, Plaintiff responded to the Court's Order to Show Cause by letter advising that the parties had reached a final settlement ("January 14 Letter"). (DE 10.) Apparently, Defendants contacted Plaintiff's counsel's office and engaged in settlement negotiations. (*Id.* at 1.)

Specifically, the day after service was effectuated, an individual named Abraham, who identified himself as Basari's store manager, contacted Plaintiff's counsel and stated that Defendants intended to pay Plaintiff for "some of his unpaid wages" and would produce payroll records generated via a third-party company. (*Id.* at 2.) Plaintiff's counsel then received an email on October 12, 2021, containing Plaintiff's payroll records from an individual who identified himself as "Zachary Marans, Part Owner of Basari Market, LLC." (*Id.*) Plaintiff's counsel reviewed the payroll records and the parties once again engaged in settlement

negotiations.  (*Id.*)  Ultimately, the parties were able to reach a final settlement agreement.  (*Id.*)

Plaintiff's counsel asserts that he continuously advised Defendants of their obligations to appear

in this action and their option to retain counsel, to defend against the claims asserted against

them, and adjudicate the matter on its merits.  (*Id.*)  Plaintiff's counsel does not represent that

Defendants ever retained counsel.  Notwithstanding the same, Plaintiff's counsel copied "Chris

Albanese, Esq., White Hilserty[2], Attorney for Defendants" on the letter via electronic mail.  (*Id.*

at 2.)

The Court set a deadline for the parties to file a join motion for settlement approval in

accordance with *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015).

(Electronic Order, dated Jan. 18, 2022.)  As the deadline approached, Plaintiff filed a letter, again

copying Mr. Albanese, seeking a two-week extension while the parties finalize "the necessary

documents for the Court's review and [obtain] client's signatures. . ."  (DE 11.)

Again, the parties' deadline came and went with no submission by the parties.  The Court

issued an Order on March 21, 2022, providing a new deadline—which the parties missed—and

again on March 29, 2022, setting a deadline of April 8, 2022, and marking the extension "final."

(Electronic Order, dated Mar. 21, 2022; Electronic Order, dated Mar. 29, 2022).

On April 8, 2022, Plaintiff filed a letter seeking another extension.  (DE 12.)  Plaintiff's

counsel explained that its delinquency was due to "our office's temporary loss of contact with

our client and our inability to reach him during most of the month of March."  (*Id.* at 1.)  Upon

reconnecting with his client, settlement documents were drafted and sent to defense counsel—

who the Court can assume is Mr. Albanese, who again is copied on the letter—for his review.

---

[2] This is a typographical error. The correct firm name, copied on counsel's subsequent letters is "White, Hilferty & Albanese."  (*See* DE 11 at 2.)

(*Id.*)  The Court granted Plaintiff's request for an extension.  (Electronic Order, dated Apr. 9, 2022.)

Finally, on April 22, 2022, the instant letter motion for settlement approval was filed. (DE 13.)  The motion requests the Court's approval of the attached settlement agreement between Plaintiff and Basari ("Settlement Agreement").  (DE 13; DE 13-1.)  Bilgoray is not a party to the settlement.  (*Id.*)  Plaintiff and Basari do not necessarily submit the motion jointly, but instead Plaintiff indicates in a footnote that "[c]ounsel for Basari" has "no objections" to the motion or the Settlement Agreement.  (*Id.* at n.1.)  And while Plaintiff executed the Settlement Agreement, Plaintiff contends that "we are awaiting [Basari's] signature so that we can supplement the attached with a fully executed copy of the [Settlement] Agreement."  (*Id.*)  It appears that Mr. Albanese received a copy of the motion via email.  (*Id.* at 5.)

The motion for settlement approval was referred to the undersigned for a Report and Recommendation on April 25, 2022.  (Electronic Order, dated Apr. 25, 2022.)  A fully executed Settlement Agreement was never filed.

## I.    STANDARD FOR APPROVING FLSA SETTLEMENTS

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i)     a notice of dismissal before the opposing party serves either an answer of a motion for summary judgment; or

(ii)    a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act.  796 F.3d at 206.  Such

considerations include the laudable aim of "'extend[ing] the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id*. (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).  Accordingly, in this Circuit, Rule 41's "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Id*.

"Generally, if the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved" by the reviewing court.  *Ceesae v. TT's Car Wash Corp.*, 17 CV 291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018) (internal quotation marks and citation omitted) *report and recommendation adopted by* 2018 WL 741396 (Feb. 7, 2018).  In reviewing the reasonableness of the proposed settlement, courts consider the totality of the circumstances, including relevant factors such as:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*¸ 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citations omitted) ("*Wolinsky* Factors").

Factors weighing *against* settlement approval include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id*. (internal quotation marks and citations omitted).

Even if an application of the *Wolinsky* Factors demonstrates that the agreement is reasonable, the court must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (citation omitted), *report and recommendation adopted by* 2017 WL 3037406 (E.D.N.Y July 17, 2017). Specifically, courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted).

Related to the final admonition, courts must also ensure that any attorney's fees provided for in the agreement are reasonable. *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action."); *see also Ceesae*, 2018 WL 1767866 at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement") (citing 29 U.S.C. § 216(b)).

Against this backdrop, the Court reviews the proposed Settlement Agreement and motion.

## II.    DISCUSSION

Having reviewed Plaintiff's application, the Court finds that Plaintiff's motion for settlement approval contains certain deficiencies that prevent approval of the settlement. Specifically, the Settlement Agreement is not fully executed, the application is missing important information required for the Court to evaluate whether the proposed Settlement Agreement is fair

and reasonable, and the totality of the circumstances do not favor approval.  Each of these

deficiencies is described below.

### A.  Failure to Submit a Fully Executed Settlement Agreement

Plaintiff's failure to submit a fully executed Settlement Agreement is a complete bar to

this Court's approval of the Settlement Agreement.

"A prerequisite before submission for approval by the court is a fully executed settlement

agreement."  *Hernandez v. Fresh Diet Inc.*, No. 1:12-CV-4339, 2017 WL 4838328, at *4

(S.D.N.Y. Oct. 25, 2017); *Ream v. Berry-Hill Galleries, Inc.*, No. 16 CIV. 7462 (SLC), 2020 WL

5836437, at *4 (S.D.N.Y. Oct. 1, 2020) ("Plaintiff must submit the fully-executed Agreement

along with a letter explaining why the Agreement is fair and reasonable to permit the Court to

undertake a proper *Cheeks* review"); *Samaroo v. Deluxe Delivery Sys. Inc.*, No. 11 CIV. 3391

(HBP), 2016 WL 1070346, at *3 (S.D.N.Y. Mar. 17, 2016) (declining to approve an FLSA

settlement as to certain plaintiffs where "[a]s an initial matter, because [plaintiffs] have not

signed the Settlement Agreement, they cannot be bound by it").

Here, the Settlement Agreement submitted by Plaintiff is only signed by Plaintiff.  (DE

13-1.)  Without signature on behalf of Basari, the Court cannot grant approval.  Basari's failure

to execute the Settlement Agreement is not because it has not had the opportunity to do so.  In

Plaintiff's February 18, 2022 letter to the Court, Plaintiff represented that only a two-week

extension was needed to finalize the settlement documents and "[obtain] clients' signatures."

(DE 11.)  Plaintiff further represented two months later in its motion that he was still awaiting

Basari's signature and once obtained, a fully executed Settlement Agreement would be filed.

(DE 13 at n.1.)  Several months have passed—and nearly a year since Plaintiff first expected

client signatures—and no fully executed agreement has been filed.  Defendants' prolonged

failure to provide signatures lends the Court to believe that perhaps Defendants do not intend to be bound by this Settlement Agreement. This, in conjunction with the fact that the motion for settlement approval is not necessarily a joint one (standard for *Cheeks* motions), causes the Court pause in recommending its approval. *See Velazquez v. Yoh Servs., LLC*, No. 17 CIV. 00842 (CM), 2017 WL 4404470, at *3 (S.D.N.Y. Sept. 25, 2017) ("This Court requires parties to submit their settlements in writing, for approval, together with a joint letter motion"); *see e.g. Li v. HLY Chinese Cuisine Inc.*, 596 F. Supp. 3d 439, 444 (E.D.N.Y. 2022) (approving "the parties' joint motion for settlement approval pursuant to *Cheeks*"); *Grijalba v. Metro Rite Laundromat, Inc.*, No. 20 CV 3398 (LB), 2021 WL 8316291, at *1 (E.D.N.Y. Oct. 7, 2021) ("The parties subsequently reached a settlement and now jointly move for Court approval of their settlement agreement pursuant to *Cheeks*"). Indeed, when reviewing settlement agreements for enforceability in the FLSA context, courts have found that where there is a writing which indicates the settlement agreement is non-binding until signed—like counsel's representation here that finalized documents await Basari's signature—a party's failure to sign is dispositive of its intent not to be bound. *Hernandez v. Fresh Diet Inc.*, No. 1:12-CV-4339, 2017 WL 4838328, at *3 (S.D.N.Y. Oct. 25, 2017).

For this reason alone, the undersigned respectfully recommends that the Court deny approval of the Settlement Agreement.

## B. Bona Fides of the Dispute and Range of Possible Recovery

If the Court were to look past the threshold issue that the Settlement Agreement is not fully executed, the application for settlement approval still requires denial for its failure to adequately provide the bona fides of the dispute and the parties' estimate of Plaintiff's range of possible recovery.

"To indicate the range of recovery, a plaintiff must at least indicate 'each party's estimate of the number of hours worked or the applicable wage.'" *Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78, 83 (E.D.N.Y. 2019) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F.Supp.3d 170, 176 (S.D.N.Y. 2015).  A plaintiff's maximum possible recovery, and the basis for that estimate, is one of the categories of information minimally required in order for the Court to evaluate the bona fides of the dispute.  *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015).  "A plaintiff can show the range of recovery based on, *inter alia*, facts alleged in the Complaint or revealed through discovery." *Li*, 596 F. Supp. 3d at 446.  "Without some proof of the parties' calculations, the Court cannot find that the range of the plaintiff's recovery is reasonable." *Narvaez v. Black Label Salon 25 Corp.*, No. 20 CIV. 4465 (ER), 2021 WL 1118383, at *1 (S.D.N.Y. Feb. 1, 2021).

Plaintiff states that the "parties have agreed to settle all claims asserted in this matter for $10,000.00."  (DE 13 at 3.)  Plaintiff submits that this amount is "reasonable" in light of the claims and defenses and considering the payroll records produced by Defendants.  (*Id.*)  However, without more, the Court cannot determine whether $10,000 is reasonable. The paucity of the description is palpable.

By his Complaint, Plaintiff seeks compensatory damages and liquidated damages "in an amount exceeding $100,000."  (DE 1 at ¶ 28.)  But to the extent that figure is based on calculations according to Plaintiff's allegations in the Complaint, such figure is unreliable because Plaintiff admits in his motion that he overstated his start date by a year.  (DE 13 at n.3.)  Plaintiff asserts in his motion that he regularly worked 62 hours per week but was paid a flat weekly salary of $700.  (*Id.* at 2.)  Plaintiff contends that Defendants, therefore, did not compensate him for approximately 22 hours of overtime per week.  (*Id.*)  Even if the Court were

to take on the arduous task of calculating Plaintiff's damages, this would not indicate the amount Plaintiff anticipates he may be able to recover by way of liquidated damages, spread of hours compensation, or interest.  Simply put, Plaintiff has not stated his possible maximum recovery or his calculations for the same.  Furthermore, Basari's competing estimate of Plaintiff's potential recovery is utterly missing.  Without Plaintiff and Basari's estimates of Plaintiff's possible range of recovery, the Court cannot find that the settlement amount is reasonable.  *See Narvaez*, 2021 WL 1118383 at *1; *Rosario v. EMZ Sols. LLC*, No. 18-CV-3297(FB) (CLP), 2019 WL 13159569, at *12 (E.D.N.Y. Nov. 14, 2019) (finding it "impossible for the Court to render an opinion on the fairness of the proposed settlement" where the parties did not provide the court with specific calculations or how the settlement award compares to plaintiffs' maximum potential recover if successful on all claims); *cf. Lee v. Samiti Tech. Inc.*, No. 21-CV-1032(CBA)(TAM), 2021 WL 7906558, at *3 (E.D.N.Y. Sept. 8, 2021) (finding the proposed settlement reasonable where plaintiff submitted a "best-case scenario" recovery estimate, taking into account "overtime, liquidated damages on the overtime, underpaid wages, liquidated damages on [underpaid wages], unpaid health insurance, [and] liquidated damages on [unpaid health insurance]" and Defendants submitted their competing estimate of Plaintiff's total damages).

Therefore, this Court cannot properly evaluate the merits of the proposed settlement. Accordingly, it is respectfully recommended that the Court deny settlement approval.

### C.  The Totality of the Circumstances

"The Court's review [of FLSA settlements] must be based on the totality of the circumstances." *Quispe v. Stone & Tile Inc.*, 583 F. Supp. 3d 372, 375 (E.D.N.Y. 2022).  Indeed,

the factors set out by the *Wolinsky* court are not meant to be an exclusive list. *See Wolinsky*, 900 F. Supp. 2d at 335 ("court should consider the totality of circumstances").

Here, the Court should not completely ignore that as a result of this settlement, Plaintiff states that he intends to dismiss his claims against Bilgoray pursuant to Rule 41(a) without prejudice. (DE 13 at n.2.)

Federal Rule of Civil Procedure 41(a)(1)(A) permits the voluntary dismissal of a case by a plaintiff by (i) a notice of dismissal filed by plaintiff prior to answer or motion for summary judgment, or (ii) a stipulation of dismissal signed by all parties. Typically, "[s]ubject to. . . any applicable federal statute," dismissal under Rule 41(a)(1)(A) requires no court action in order to take effect. Fed. R. Civ. P. 41(a)(1)(A); *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 111 (2d Cir. 2012) ("Rule 41(a)(1)(A) is the only form of dismissal requiring no court action to be effective").

However, the Second Circuit has held that *Cheeks* "applies equally to Rule 41(a)(1)(A)(i) dismissals without prejudice." *Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 811 (2d Cir. 2022). The Second Circuit reasoned that "[u]nless *Cheeks* review applies to [Rule 41(a)(1)(A)(i) dismissals without prejudice] as well as [Rule 41(a)(1)(A)(ii) dismissals with prejudice], parties could evade *Cheeks* review simply by negotiating a settlement and release, then filing a unilateral dismissal without prejudice rather than a stipulated dismissal." (*Id.* at 810.)

Therefore, to the extent the approval of this Settlement Agreement would necessarily lead to the dismissal of claims as against Bilgoray, Plaintiff must provide additional information as to the existence, if any, of a settlement agreement between Plaintiff and Bilgoray. (*Id.*) While Bilgoray is not a party to *this* Settlement Agreement with Plaintiff, it is not clear to the Court that

he is not a party to *any* settlement agreement with Plaintiff.[3]  In furtherance of a totality of circumstances approach, and in light of the circumstances here, the Court cannot find that Plaintiff's anticipated dismissal of Bilgoray without prejudice, without more information, supports settlement approval.

### D.  Remaining Factors

Notwithstanding the above bars to settlement approval, should the District Judge continue to review the Settlement Agreement, the remaining *Wolinsky* factors favor approval of the settlement.

### i.    Avoidance of Burdens and Expenses

The Court agrees with Plaintiff that settlement will help the parties avoid the costs and risks of litigation.  (DE 13 at 2.)  Specifically, Plaintiff contends that Mr. Marans provided time and pay records, which if accepted as true, would establish that Plaintiff was properly paid. Although Plaintiff maintains that the accuracy of these records is questionable, settlement allows Plaintiff to avoid the burden of having to establish the records are not accurate at trial.  (*Id.*) Thus, this factor weighs in favor of approval.

### ii.   Seriousness of the Litigation Risks

Because there is a legitimate dispute between the parties, the proposed Settlement Agreement is a means of avoiding significant litigation risks.  Plaintiff alleges, *inter alia*, that he is entitled to damages because Defendants paid him a flat salary, but he worked up to 22 hours of overtime per week.  On the other hand, Basari contends that Plaintiff was properly paid for all

---

[3] The Court cautiously notes that Plaintiff was initially contacted by an "Abraham" who purported to be a store manager of Basari.  (*See* DE 10 at 2.)  Coincidentally, Plaintiff alleges that Defendant "Avraham Bilgoray" is an owner and operator of Basari.  (DE 1 at 12.)  In his initial letters to the Court, Plaintiff indicated that after "Abraham" and Mr. Marans reached out, Plaintiff's counsel engaged "Defendants" in settlement negotiations and wherein the parties discussed their "respective positions."  (DE 10 at 2.)

hours work and purportedly has the payroll records to prove it.  In light of this dispute, the proposed settlement, as a compromise between the parties, provides both Plaintiff and Basari with certainty regarding the resolution of the case.  This factor weighs in favor of approval.

### iii.    Arm's Length Bargaining

The Court is sufficiently satisfied that the parties have properly engaged in bargaining at arms-length to reach the proposed settlement.  Plaintiff, at all times, was represented by counsel, namely James O'Donnell and Roman Avshalumov of Helen F. Dalton & Associates, P.C.  While Plaintiff's motion does not indicate whether counsel are experienced in wage and hour cases, the law firm's public website indicates that the firm specializes in personal injury and labor law.[4]

It is not clear from the record whether Basari was represented by counsel during negotiations.  In fact, the record suggests that at first, Basari was not represented by counsel because Plaintiff began negotiations with "Abraham, store manager" and Mr. Marans, as part owner of Basari, and Plaintiff's counsel made it a point to tell the Court that he advised Defendants of their ability to retain counsel to appear or respond on their behalf.  (*See* DE 10.)  However, Plaintiff began copying Mr. Albanese, as "Attorney for Defendants" beginning in January 2022.  (*See id.*)  Further, based on Plaintiff's counsel's representations, Basari has counsel who has reviewed the Settlement Agreement.  (*See* DE 12 at 1) ("Since then . . . we have drafted the settlement documents, which we sent to defense counsel for his review earlier this week. Defense counsel is currently in the process of reviewing same").  Nonetheless, even if Basari was not represented by counsel, "the purpose of the judicial review process mandated by *Cheeks* is to ensure that the agreement is fair and reasonable to the *plaintiff*," not the defendant.  *Deran v. Antalia Turkish Cuisine LLC*, No. 19-CV-6833 (BCM), 2020 WL 3414890, at *2

---

[4]  *See* Helen F. Dalton, The Personal Injury Lawyers, *https://helendalton.com/* (last visited Jan. 23, 2023.)

(S.D.N.Y. June 22, 2020) (quotes omitted) (emphasis in original).  Therefore, Basari's potential

lack of counsel is not necessarily dispositive here.  Furthermore, Plaintiff asserts that settlement

was reached after "back-and-forth" negotiations and an initial production of documents.  (DE 13

at 2.)  Finally, "both sides made compromises on their positions in order to achieve a fair and

reasonable settlement." (*Id.* at 3.)  Accordingly, this factor favors approval.

### iv.    No Fraud or Collusion

Fraud or collusion are generally not a concern when the plaintiff no longer works for the

defendant.  *Quispe*, 583 F. Supp. 3d at 375.  Here, because Plaintiff is no longer employed by

Defendants, the risk of coercion is minimal to nonexistent.  *See id.*  The record bears no evidence

suggesting otherwise.  This factor weighs in favor of settlement approval.

### E.  None of the *Wolinsky* Factors Weighing Against Approval are Present

The factors enumerated by *Wolinsky* which specifically weigh against settlement approval

are not present here.

*First*, there is no evidence before the Court that there are other employees similarly

situated to Plaintiff's circumstances.  While Plaintiff asserts collective action allegations, such

individuals are not identified, the Court is unaware of any claims filed by other employees of

Basari, and Plaintiff did not seek conditional certification of the FLSA collective.  *Browder v.

Advertisement Carriers Enterprises, Inc.*, No. 15 CIV. 5594 (PAE), 2016 WL 7031608, at *4

(S.D.N.Y. Nov. 30, 2016) ("The fact that no other employee has come forward with a claim

supports settlement approval"); *Boyd v. Pinnacle Athletic Campus, LLC*, No. 6:19-CV-06795

EAW, 2022 WL 669169, at n.1 (W.D.N.Y. Mar. 7, 2022) ("While Plaintiff's complaint alleges

that there are other similarly situated employees, it does not identify any such individuals, nor

did Plaintiff seek conditional certification of the FLSA collective").

*Second*, while this matter did not progress so that either side spent significant time or resources in the litigation or settlement process, given the settlement amount and the parties swiftness to avoid litigation, it is likely Basari will be deterred from violating wage and hour laws in the future.

*Third*, the record offers no history of previous non-compliance with the FLSA by Basari, nor have the parties suggested otherwise. Thus, this factor holds little weight.

*Fourth*, the desirability for a mature record is weak. Early on in the parties' settlement negotiations, Mr. Marans produced time and pay records, a salient production in a wage and hour case such as this. (*See* DE 13 at 2.) These critical records, if accepted as true, evidence that Plaintiff was properly compensated for all hours worked. (DE 13 at 2.) While the Court acknowledges that although maturation of the record could lead to further developments, especially in light of Plaintiff's contention that Basari's records are not accurate, this factor alone does not require the Court to reject the proposed settlement. *See Garcia v. Grandpa Tony's Enterprises LLC*, No. 20-CV-4691 (JMW), 2021 WL 4949030, at *3 (E.D.N.Y. Oct. 25, 2021) ("Last, although an argument could be made that maturation of this record could lead to further legal development in FLSA cases, this factor alone does not require the Court to reject the proposed settlement agreement").

### F.  None of the Non-Economic Terms Flagged Problematic by *Cheeks* are Present

The proposed Settlement Agreement does not contain any of the problematic provisions that are flagged in *Cheeks*. *First*, it contains no confidentiality provision. (DE 13 at 3; *see* DE 13-2.) *Second*, while the Settlement Agreement contains a release, it is not overbroad. Indeed, it is limited to Plaintiffs' FLSA and NYLL claims raised in this lawsuit. (*Id.*) The clause is aimed

at preventing frivolous litigation arising out of facts and claims from the Complaint.  This weighs in favor of settlement approval.

### G.  Attorneys' Fees

Because Plaintiff's motion for settlement approval requires denial, Plaintiff's counsel should not be awarded attorneys' fees.  *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) ("Under the FLSA and the NYLL, *a prevailing plaintiff* is entitled to reasonable attorneys' fees and costs") (emphasis added).  However, even if Plaintiff's motion were to be granted, Plaintiff's counsel's request for attorneys' fees should be denied.

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request."  *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted).  When considering applications for attorneys' fees, Courts employ the lodestar method.  *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21 CV 3284 (ENV)(LB), 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022).  The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a presumptively reasonable fee."  *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Courts may also employ the "percentage of the fund" method which permits attorneys to recover a percentage of the settlement amount via a previously determined contingency fee. *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417-19 (2d Cir. 2010).  Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases.  *Lai v. Journey Preparatroy Sch., Inc.*, No. 19 CV 2970 (CLP), 2022 WL 3327824, at *3 (E.D.N.Y. May 26, 2022) ("With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable"); *Kazadavenko*, 2022 WL 2467541 at *4 (collecting cases). However, even where fees are reasonable when analyzed under the percentage method, courts

17

will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, 17 Civ. 9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted).

Critically, "[t]he fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600; *Wolinsky*, 900 F. Supp. 2d at 336 ("In the Second Circuit, that entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done").

Here, Plaintiffs' counsel requests $3,150 in fees and $550 in costs out of the $10,000 settlement amount. (DE 13 at 4.) Once costs are subtracted from the settlement amount ($10,000-$550 = $9,450), the fees sought by counsel are exactly a one-third contingency of the settlement fund ($9450 / 3 = $3,150). This contingency fee was agreed upon in the Plaintiff's retainer agreement with his attorneys. (*Id.*)

Although this amount represents a one-third contingency fee similar to those granted by courts in the Second Circuit, the Court cannot make a determination as to whether the proposed fees are reasonable here. Fatal to counsel's application is that no contemporaneous billing records conveying the attorneys' billing rates, description of services or the hours worked have been submitted. Without this evidence, the Court cannot determine whether counsel's fee request is commensurate with the amount of time spent on this case and therefore reasonable. Plaintiff's counsel's failure to provide this documentation necessarily warrants denial of the fee application. *See, e.g., Fontana v. Bowls & Salads Mexican Grill Inc.*, No. 19-CV-1587 JMA ARL, 2022 WL 3362181, at *8 (E.D.N.Y. Feb. 3, 2022), *report and recommendation adopted*, 2022 WL 2389298 (E.D.N.Y. July 1, 2022) ("Plaintiff has failed to provide contemporaneous

billing records for attorneys involved, or even a list of attorneys involved and their billing rates. . . Accordingly, Plaintiff has failed to meet her burden of establishing the reasonableness of the fees requested and therefore the undersigned respectfully recommends that no attorney's fees be awarded"); *Lopez*, 96 F. Supp. 3d at 182 (denying application for attorneys' fees where plaintiff's counsel provided no contemporaneous billing record evidence); *Mamani v. Licetti*, No. 13-CV-7002 (KMW) (JCF), 2014 WL 2971050, at *3 (S.D.N.Y. July 2, 2014) ("The parties. . . do not provide the Court with any information to aid the Court in assessing the reasonableness of the fee award. Accordingly, the Court cannot approve the Settlement Agreement's allocation of attorney's fees at this time").

## III.   CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's motion for settlement approval be denied.

## IV.   OBJECTIONS

A copy of this Report and Recommendation is being electronically served on Plaintiff's counsel.  Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants by overnight FedEx their last known addresses and file proof of service on ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or

else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
        January 24, 2023

                                            **S O   O R D E R E D:**

                                            /s/ *James M. Wicks*
                                                JAMES M. WICKS
                                            United States Magistrate Judge

20