UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ABDULIO IVAN CIFUENTES GRAMAJO,
*individually and on behalf of all others similarly situated,*

                Plaintiff,

     -against-

BASARI MARKET LLC *et al,*

               Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
21-CV-4960 (EK) (JMW)

Roman M. Avshalumov, Esq.
James O'Donnell, Esq.
Avraham Y. Scher, Esq.
**Helen F. Dalton & Associates, P.C.**
80-02 Kew Gardens Road, Suite 601
Kew Gardens, NY 11415
*For Plaintiff Abdulio Ivan Cifuentes Gramajo*

Matthew R. Capobianco, Esq.
**Littler Mendelson P.C.**
290 Broadhollow Road, Ste 305
Melville, NY 11747
*For Defendants Basari Market, LLC and Avraham Bilgoray*

**WICKS,** Magistrate Judge:

      Basari Market LLC is a food market and deli located in Roslyn, New York, where Plaintiff Abdulio Ivan Cifuentes Gramajo, brought this collective action[1] pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and the New York Labor Law ("NYLL"), against Defendants Basari Market LLC ("Basari") and Avraham Bilgoray, owner and operator of Basari ("Bilgoray").  (ECF No. 1.)  Specifically, Plaintiff alleges that Defendants

---

[1] Plaintiff initially pursued this action as a collective action, but now only seeks to recover individually.

1

failed to properly pay overtime wages, maintain accurate payroll records, provide required wage statements, failed to post required wage notices, and maintain accurate payroll records. (*Id.*) As a result, Plaintiff seeks damages plus interest, attorneys' fees and costs. (*Id.* at ¶ 27.)

The Court initially denied of the parties' motion for settlement approval (ECF Nos. 14 and 16), but the parties have since refiled their motion (ECF No. 40.) The renewed motion, which solely involves Plaintiff and Defendant Basari (*Id.* at 1 n.1) (dismissing claims against Defendant Bilgoray), has been referred to the undersigned by the Hon. Eric. R. Komitee. For the reasons stated herein, the undersigned respectfully recommends **granting** the parties' motion for settlement approval (ECF No. 40.).

## I.  BACKGROUND

The factual background previously set forth in the undersigned's Report & Recommendation ("R&R") (ECF No. 14) is hereby incorporated by reference and does not bear repeating here.

Plaintiff filed his Complaint on September 2, 2021. (ECF No. 1.) On December 29, 2021, the undersigned issued an Order to Show Cause, directing Plaintiff to show cause on or before January 14, 2022, why it should not be recommended to Judge Komitee that the case be dismissed for failure to prosecute. (Electronic Order, dated Dec. 29, 2021) (citing Fed. R. Civ. P. 41.) On January 14, 2022, Plaintiff responded to the Court's Order to Show Cause by letter advising that the parties had reached a final settlement. (ECF No. 10.)

The Court then set a deadline for the parties to file a join motion for settlement approval in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (Electronic Order, dated Jan. 18, 2022.) The parties' deadlines came and went with no submission by the parties. The Court issued new deadlines for the parties to file their *Cheeks*

2

motion which they finally did on April 22, 2022. (*See* ECF No. 13); (*see* Electronic Orders dated Mar. 21, 2022, Mar. 29, 2022, and Apr. 9, 2022.)

Judge Komitee referred the motion for settlement approval to the undersigned. (Electronic Order dated Apr. 25, 2022.) The undersigned's R&R pointed out several deficiencies which prevented approval of the settlement agreement. (ECF No. 14 at 8.) *First,* the settlement agreement was not fully executed by both parties, which acted as a "complete bar" for court approval (*id.* at 8). *Second,* the application for approval was missing important information in order for the Court to evaluate whether the agreement was fair and reasonable. (*Id.* at 9-10.) Specifically, the Court noted that the parties "failed to adequately provide the bona fides of the dispute and the parties' estimate of Plaintiff's range of possible recovery." (*Id.* at 9.) *Finally,* the totality of the circumstances did not weigh in favor of approval—namely, the Court needed further information regarding the alleged settlement agreement reached between Plaintiff and Defendant Bilgoray since Plaintiff intended to dismiss all claims against him under Fed. R. Civ. P. 41(a).[2] (*Id.* at 12.) The undersigned found that the remaining factors otherwise weighed in favor of settlement approval. (*Id.* at 13-16.) The undersigned also denied counsels' request for attorneys' fees since they had not filed contemporaneous billing records for the Court's review. (*Id.* at 18.) Judge Komitee subsequently adopted the R&R in its entirety. (ECF No. 16.)

Following the adoption of the R&R, Plaintiff moved for default judgment against both Defendants for their failure to cooperate in signing the settlement agreement or otherwise retain counsel and appear in the action. (ECF Nos. 18 and 27.) However, when Defendant Basari's current counsel appeared on its behalf (ECF No. 35), Plaintiff's counsel withdrew the motion for

---

[2] The original settlement agreement was never signed by Defendant Bilgoray and he was therefore "not a party to the settlement." (ECF No. 14 at 12.)

3

default judgment and requested time to re-file the motion for settlement approval under *Cheeks*. (Electronic Order dated Feb. 27, 2024.)  The motion for settlement approval was again referred to the undersigned for an R&R.  (Electronic Order, dated Mar. 29, 2024.)  The undersigned initially denied the parties' motion with leave to renew for failure to submit the required information for the Court to determine the reasonableness of attorneys' fees.  (*See* Electronic Order dated Apr. 1, 2024.)  The parties have since filed the requisite information.  (ECF No. 40.)

## II.     STANDARD FOR APPROVING FLSA SETTLEMENTS

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i)     a notice of dismissal before the opposing party serves either an answer of a motion for summary judgment; or

(ii)    a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act.  796 F.3d at 206.  Such considerations include the laudable aim of "'extend[ing] the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id*. (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).  The protections of the FLSA are strong, even "employees cannot waive the protections of the FLSA." *Perry v. City of New York*, No. 21-2095, 2023 WL 5490572, at *7 (2d Cir. Aug. 25, 2023).

Accordingly, in this Circuit, Rule 41's "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206.  "Generally, if the proposed settlement reflects a reasonable

4

compromise over contested issues, the settlement should be approved" by the reviewing court. *Ceesae v. TT's Car Wash Corp.*, No. 17-CV-291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018) (internal quotation marks and citation omitted) *report and recommendation adopted by* 2018 WL 741396 (Feb. 7, 2018).  In reviewing the reasonableness of the proposed settlement, courts consider the totality of the circumstances, including relevant factors such as:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citations omitted) ("*Wolinsky* Factors").

Factors weighing *against* settlement approval include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id*. (internal quotation marks and citations omitted).

Even if an application of the *Wolinsky* Factors demonstrates that the agreement is reasonable, the court must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, No. 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (citation omitted), *report and recommendation adopted by* 2017 WL 3037406 (July 17, 2017). Specifically, courts should guard against "highly restrictive confidentiality provisions,"

overbroad releases that "would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted).

Courts must also ensure that any attorneys' fees provided for in the agreement are reasonable. *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); *see also Ceesae*, 2018 WL 1767866 at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement").

Against this backdrop, the Court reviews the proposed Settlement Agreement and motion.

### III.  DISCUSSION

The Court notes at the outset, that the parties have since cured the prior deficiencies. That is, the settlement agreement has now been executed by all parties and contains all required information. (ECF No. 39 at 7.)

The agreement totals $15,000.00 with Plaintiff receiving $9,633.34 and counsel receiving $5,366.66 in fees and litigation costs. (ECF No. 40 at 5.) Defendant Basari shall issue separate checks to Plaintiff and his counsel for the respective amounts "within thirty (30) days of judicial dismissal of the Action with prejudice." (ECF No. 39 at 1.) Plaintiff additionally agrees to release claims under the FLSA, the NYLL, or any federal or state statute related to wage-and-hour claims. (*See id.* at 2-3.) Notably the Settlement Agreement does *not* contain a Confidentiality Clause. (*See generally* ECF No. 39.) However, the Agreement does contain

6

language stating that this Court will retain jurisdiction to enforce the parties' settlement agreement and release:

> 14. The parties expressly agree that the United States District Court for the Eastern District of New York ("EDNY") shall retain sole and exclusive jurisdiction over any action or proceeding to enforce or otherwise arising out of this Agreement.

(*Id.* at 5.)[3]

For the reasons set forth below, the Court finds that these terms are acceptable.

### A. Settlement Agreement

#### i. Bona Fides of the Dispute and Range of Possible Recovery

Unlike the prior motion for settlement approval, the instant application for settlement approval adequately provides the bona fides of the dispute and the parties' estimate of Plaintiff's range of possible recovery. (ECF No. 40.)

The Court must receive information discussing "the nature of plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure…to plaintiff[]…, the bases of estimates of plaintiffs' maximum possible recovery, the probability of plaintiffs' success on the merits, and evidence supporting any requested fee award." *Villanueva v. 179 Third Avenue Rest Inc.,* No. 16-cv-8782 (AJN), 2018 U.S. Dist. LEXIS 116379, at *3-4 (S.D.N.Y. July 12, 2018) (citing *Lopez v. Nights of Cabiria, LLC,* 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

Plaintiff alleges that he was not paid for 22 hours of overtime per week for the months in which he was employed by Defendants. (ECF Nos. 1 and 40.) Per his Complaint, Plaintiff seeks compensatory damages and liquidated damages "in an amount exceeding $100,000." (ECF No. 1 at ¶ 28.) Although Plaintiff has not described his maximum possible recovery, in the damages

---

[3] The parties additionally attached a Stipulation and Order of Dismissal with Prejudice, which provides: "[T]he Court shall retain jurisdiction of this matter for the sole purposes of enforcing the parties' settlement." (ECF No. 39-1.) The question of whether the Court will continue to retain jurisdiction over the settlement is respectfully deferred to Judge Komitee.

7

calculations submitted with his motion for default judgment, Plaintiff provides a chart showing that from January 2021 through August 2021, he would be entitled to at least $2,420.00 for spread of hours, $10,000 in statutory damages, and at least $40,000 in overtime wages and liquidated damages collectively.  (*See* ECF No. 28-6.)  Thus, Plaintiff's damages could yield a total of approximately $52,420.000.

Defendant Basari, however, disputes Plaintiff's allegations, stating that it has properly paid Plaintiff and "continues to deny[] each and every allegation of wrongdoing made by Plaintiff."  (ECF No. 40 at 2; ECF No. 39 at 4.)  Basari points to contemporaneous time and pay records demonstrating that Plaintiff was paid the appropriate regular wages and overtime wages for hours worked beyond 40 and "rarely, if ever, worked a 10+ hour day at Basari."  (ECF No. 40 at 3.)  Thus, Defendant Basari's contention that Plaintiff had not worked any unpaid overtime during the relevant period would ultimately mean that Plaintiff could recover *nothing at all* should the case move forward to trial.

Nonetheless, Plaintiff "underst[ands] the serious risks of proceeding with litigation" and both parties prefer to resolve this matter early on to "avoid[] the costs and risks of litigation."  (*Id.*).  Thus, the parties have adequately set forth their respective positions and the range of possible recovery for the Court to determine whether the settlement is fair and reasonable. *Cf Villanueva,* 2018 U.S. Dist. LEXIS 116379 at *4 (finding that the parties failed to provide a discussion of what plaintiffs were owed as well as "an indication that [d]efendant contes[ed] [p]laintiffs' estimate").

   **ii. Avoidance of Burdens and Expenses and Litigation Risks**

Next, the Court agrees with the parties' recognition that settlement will help the parties avoid the costs and risks of litigation.  (ECF No. 40 at 3; ECF No. 39 at 4.)  Defendant contends

8

that settling now will avoid "motion practice, trial, and counsel fees, which would be significant if the case were to go to trial." (ECF No. 40 at 3.) Further, Defendant notes that it could be required to pay all of Plaintiff's attorneys' fees which could be substantial even if the damages awarded were minimal. (*Id.*)

Additionally, because there is a legitimate dispute between the parties, the proposed Settlement Agreement is a means of avoiding significant litigation risks. Plaintiff maintains he was not paid his overtime hours while Defendant contends that Plaintiff was *indeed* properly paid. The proposed settlement acts as a compromise between the parties and provides both Plaintiff and Basari with certainty regarding the resolution of the case and allows Plaintiff to avoid the burden of having to establish that Defendant's records are not accurate at trial. Thus, these factors weigh in favor of approval.

### iii.     Arm's Length Bargaining

The Court is sufficiently satisfied that the parties have properly engaged in bargaining at arms-length to reach the proposed settlement. Plaintiff, at all times, was represented by counsel, namely Helen F. Dalton & Associates, P.C. Plaintiff's counsels' statement describing their qualifications, demonstrates that they are well-versed in wage and hour cases. (ECF No. 40-3 at 1) (stating that Avshaumov has represented plaintiffs and defendants in labor law actions and O'Donnell has worked exclusively on employment matters while at the firm). Although it was unclear in the prior R&R as to whether Basari was represented by counsel during negotiations (ECF No. 14 at 14), the instant motion was filed and revised *once Defendant retained counsel*. (*See* ECF No. 36) (stating that Basari retained new counsel "with whom we have reached a settlement on all claims asserted in this matter"). Thus, all parties were represented by counsel at the time the agreement was executed.

Furthermore, Plaintiff asserts that settlement was reached after "back-and-forth" negotiations and an initial production of documents. (ECF No. 40 at 2.) Finally, "both sides made compromises on their positions in order to achieve a fair and reasonable settlement." (*Id.* at 4.) Accordingly, this factor favors approval.

### iv. Any Badges of Fraud or Collusion?

Fraud or collusion are generally not a concern when the plaintiff no longer works for the defendant. *Quispe*, 583 F. Supp. 3d at 375. Here, because Plaintiff is no longer employed by Defendants, the risk of coercion is minimal to nonexistent. *See id.* More importantly, the settlement agreement includes a clause attesting to the fact that Plaintiff

- "is not suffering from any impairment that would render him incapable of" fully understanding the agreement's terms;
- "has signed this Agreement freely and voluntarily and without duress;"
- has not received a promise in exchange for releasing his claims against Defendant;
- Understands the terms and conditions of the Agreement and
- Was advised to consult with counsel before executing the agreement and had a reasonable period to consider its terms.

(ECF No. 39 at 5.) This factor weighs in favor of settlement approval.

### v. Weighing the *Wolinsky* Factors

The factors enumerated by *Wolinsky* which specifically weigh against settlement approval are not present here.

*First*, there is no evidence before the Court that there are other employees similarly situated to Plaintiff's circumstances. While Plaintiff initially asserted this as a collective action (ECF No. 1), the Court is unaware of any claims filed by other employees of Basari, and Plaintiff did not seek conditional certification of the FLSA collective. *Browder v. Advertisement Carriers*

10

*Enterprises, Inc.*, No. 15-CV-5594 (PAE), 2016 WL 7031608, at *4 (S.D.N.Y. Nov. 30, 2016) ("The fact that no other employee has come forward with a claim supports settlement approval"); *Boyd v. Pinnacle Athletic Campus, LLC*, No. 19-CV-06795 EAW, 2022 WL 669169, at n.1 (W.D.N.Y. Mar. 7, 2022) ("While Plaintiff's complaint alleges that there are other similarly situated employees, it does not identify any such individuals, nor did Plaintiff seek conditional certification of the FLSA collective").

*Second*, while this matter did not progress so that either side spent significant time or resources in the litigation or settlement process, given the settlement amount and the parties' swiftness to avoid litigation, it is likely Basari will be deterred from violating wage and hour laws in the future.

*Third*, the record offers no history of previous non-compliance with the FLSA by Basari, nor have the parties suggested otherwise. Thus, this factor holds little weight.

*Fourth*, the desirability for a mature record is weak. Early on in the parties' settlement negotiations, time and pay records were produced which would be fatal to Plaintiff's case if accepted as true. (ECF No. 40 at 2.) Those records have the potential of demonstrating that Plaintiff was in fact compensated properly for all hours worked. (*Id.*) While the Court acknowledges that although maturation of the record could lead to further developments, especially in light of Plaintiff's contention that Basari's records are not accurate (*id.*), this factor alone does not require the Court to reject the proposed settlement. *See Garcia v. Grandpa Tony's Enterprises LLC*, No. 20-CV-4691 (JMW), 2021 WL 4949030, at *3 (E.D.N.Y. Oct. 25, 2021) ("Last, although an argument could be made that maturation of this record could lead to further legal development in FLSA cases, this factor alone does not require the Court to reject the proposed settlement agreement").

### vi. Are There Problematic Non-Economic Terms As Flagged by *Cheeks*?

The proposed Settlement Agreement does not contain any of the problematic provisions that are flagged in *Cheeks*. *First*, it contains no confidentiality provision. (*See* ECF No. 40 at 4); (*see generally* ECF No. 39.) *Second*, although the Agreement contains a release, it is not an unfettered general release requiring that Plaintiff waive any and all claims she may have against Defendant. (ECF Nos. 40 at 4 and 39 at 2-3.) Rather, it is limited to claims that were, and could have been, brought up to the date of the Settlement Agreement. (ECF No. 40 at 4.) Further, the clause titled "Claims Excluded from the Agreement" explicitly states that the release does

> *not* prevent Plaintiff from filing a charge or participating in any investigation or proceeding conducted by the United States Equal Employment Opportunity Commission, National Labor Relations Board or any other governmental agency charged with enforcement of any law.

(ECF No. 39 at 3) (emphasis added). The release is thus reasonable. *See e.g.*, *Garcia v. Grandpa Tony's Enterprises LLC*, No. 20-CV-4691 (JMW), 2021 WL 4949030 at *2 (E.D.N.Y. Oct. 25, 2021). This weighs in favor of settlement approval.

### B. Attorneys' Fees

In addition to the undersigned's recommended finding that the settlement agreement is fair and reasonable and approval should be granted, the undersigned also finds that the requested fees should also be granted. Here, the total settlement amount is $15,000 (ECF No. 40 at 5.) The amount requested by Plaintiff's attorneys is $5,000, or exactly one-third of the settlement amount, and is consistent with what was agreed upon between Plaintiff and his counsel in his retainer agreement. (*Id.*); (ECF No. 40-1 at 1.)

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted). When considering applications for attorneys' fees, Courts employ the lodestar

method. *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21-CV-3284 (ENV) (LB), 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022). The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Courts may also employ the "percentage of the fund" method which permits attorneys to recover a percentage of the settlement amount via a previously determined contingency fee. *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417-19 (2d Cir. 2010). Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases. *Lai v. Journey Preparatory Sch., Inc.*, No. 19-CV-2970 (CLP), 2022 WL 3327824, at *3 (E.D.N.Y. May 26, 2022) ("With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable"); *Kazadavenko*, 2022 WL 2467541 at *4 (collecting cases). However, even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, No. 17-CV-9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted).

"[I]t is very common to seek 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d at 445; *see also Azogue v. 16 for 8 Hosp. LLC*, No. 13-cv-7899, 2016 WL 4411422, at *6 (S.D.N.Y. 2016) ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693 (PGG), 2013 WL 5492998, at *26 (S.D.N.Y. 2013).

13

Critically, "[t]he fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600; *Wolinsky*, 900 F. Supp. 2d at 336 ("In the Second Circuit, that entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done").

Notwithstanding counsels' request for fees of exactly one-third of the settlement agreement—which is typically approved—the Court still analyzes the reasonableness of the attorneys' hourly rate and hours expended on this case. Unlike the prior application, which was void of contemporaneous billing records, Plaintiff's counsel has since cured their deficiency and provided their retainer agreement, contemporaneous billing records, and their qualifications and lodestar calculation for the Court's review. (ECF No. 40.)

Here, Plaintiff's counsel spent nearly 32 hours drafting the Complaint; engaging in calls with the Plaintiff and Defendants; drafting the settlement agreement and motion for default judgment; and revising the settlement agreement now before the Court. (ECF No. 40-2.) This amount of hours is reasonable given the claims alleged in this case and the case's infancy.

As for the hourly rates, senior managing attorney Roman Avshalumov charges $425.00 per hour and has performed 17 hours on this matter. (ECF No. 40-3 at 1.) He has been practicing for more than fifteen years and has tried "numerous" labor and employment cases as well as a multitude of personal injury cases. (*Id.*) Head of the labor law practice group and managing attorney, James O'Donnell, has been practicing for nine years, focusing exclusively on employment matters while at the firm. (*Id.*) He typically charges $250.00 per hour and has spent 3.8 hours on this case. (*Id.*) Avraham Scher, a third-year associate at the firm who performed 3.4 hours on this matter, specializes in wage and hour matters and charges $175.00

14

per hour. (*Id.*) Finally, paralegals expended approximately $7.8 hours of work on this case, charging $75.00 per hour. (*Id.*)

In addition to the reasonableness of the hours, the undersigned also finds that the hourly rate requested is reasonable in light of what is typically awarded in this District and the experience of the personnel working on this case. *See, e.g.*, *Li v. Chang Lung Grp. Inc.*, No. 16-cv-6722 (PK), 2020 WL 1694356, at *15 (E.D.N.Y. Apr. 7, 2020) (noting that $300 to $450 is range of reasonable hourly rates for partners in FLSA cases within the Eastern District of New York); *Kliger v. Liberty Saverite Supermarket Inc*., No. 17-cv-2520 (FB) (ST), 2018 WL 4782342, at *9 (E.D.N.Y. Sept. 17, 2018), *report and recommendation adopted as modified by* 2018 WL 4783964 (Oct. 3, 2018) (noting that the reasonable hourly rates for wage and hour cases in the district has been set at $300 to $400); *Torres v. Gristedes Operating Corp.*, No. 04-cv-3316 (PAC), 2012 U.S. Dist. LEXIS 127890, at *11 (S.D.N.Y. Aug. 6, 2012) (noting that courts in SDNY award hourly rates of $550 or more to "extraordinary attorneys held in unusually high regard by the legal community).

Finally, the undersigned undertakes a cross-check of fees applying the lodestar analysis—that is, multiplying the number of hours spent on the case by the respective attorneys' or paralegal's reasonable hourly rate. *Millea v. Metro-North R. Co*., 658 F.3d 154, 166 (2d Cir. 2011). Plaintiff's counsel attorney time records shows hourly rates as high as $425.00 and as low as $75.00 for 17 hours of work performed (ECF No. 40-2.) Accordingly, Plaintiff's lodestar amount is $9,355.00, exclusive of the requested litigation costs. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (finding that "rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time. . . are reasonable and consistent with rates allowed in this district"). The requested

15

$5,000.00 in fees are more than $4,000 *less* than the lodestar amount, which weighs in favor of approval of this amount. In addition, Plaintiff's often counsel double charged (eight times) and even *triple charged* (one time) for the same task performed. (ECF No. 40-2.) For example, counsel billed the client three times at the $425.00 rate, the $250.00 rate, and the $75.00 rate for "calls w/ client, edit/finalize complaint, file complaint/summons/cover sheet/NOA." (*Id.*) Accordingly, given the troublesome billing practices for this matter, the lodestar cross-check affirms the requested attorneys' fees of $5,000.00 is fair and reasonable in this case.

### C.  Costs

Counsel also seeks reimbursement for expenses which include (1) the filing fee of $402.00 and (2) the $148.00 in costs related to serving Defendants the Summonses and Complaint. (ECF No. 40 at 5.) However, counsel only requests $366.66 in costs, which represents two-thirds of the total expenses counsel incurred.

Reimbursement of these costs is reasonable in light of the actual costs amount of $550.00. Evidence of these expenses are scattered throughout the docket. (*See e.g.* ECF No. 1 ($402.00 filing fee); ECF No. 15 (service of prior R&R upon Defendants)). Further, such costs for filing fees and service costs are among those typically awarded in this District. *See Polanco v. Bensonhurst Rest. Corp.,* No. 16-CV-1085 (CLP), 2022 U.S. Dist. LEXIS 245713, at *12-13 (E.D.N.Y. May 27, 2022) ("[C]ourts often award costs that are incidental and necessary to [plaintiff's] representation and the filing fee and cost of service certainly qualify as necessary aspects of this litigation."); *Antonio v. Sipsak Inc.,* No. 21-cv-1871 (LGS) (SLC), 2022 U.S. Dist. LEXIS 134658, at *15 (S.D.N.Y. July 28, 2022) (recommending award of costs for filing fee and service costs), *report and recommendation adopted by* 2022 U.S. Dist. LEXIS 180887 (Oct. 3,

2022). Consequently, the undersigned recommends granting Plaintiff's counsels' request for costs in the amount of $366.66.

## IV.  CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's motion for settlement approval (ECF No. 40) be **granted in its entirety**.

## V.  OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
   May 29, 2024

                     **RESPECTFULLY RECOMMENDED**,

                     /s/ *James M. Wicks*
                       JAMES M. WICKS
                     United States Magistrate Judge